Good morning and thank you, Your Honor. My name is Gregory Fisher. I represent Carlotta Bowman. The dispute in this case pertains to whether or not Ms. Bowman passed a background check. Our position has been that she did. That she provided all of the information that Honeywell requested. In fact, they were only missing a 1099 from 1992. That she acted as promptly as she reasonably could to get them the information that they needed when they requested to verify her prior employment. Honeywell, to its credit, concedes that. Honeywell concedes that ultimately Ms. Bowman provided all of the information that they were requesting. And the record cites for that the answering brief at page 21. An excerpt of record 51, paragraphs 71 and 73. However, Honeywell takes the position that it was too late. That they revoked the offer on December 14th and that at that point Ms. Bowman lost any rights she had. There's a problem with that. A reasonable juror looking at the facts of this case could disagree. A reasonable juror could conclude that she had passed the background check and that she had provided all of the information that Honeywell needed. And here are the genuine issues of material fact that I believe are most pertinent for the court's analysis. Number one, no deadline was ever specified. No one ever told her, you have to get this information in by such and such a date or the offer is going to be revoked. Number two, she was told that she had passed. In fact, on December 13th, higher right had told her, you've passed. Your employment has been verified. On December 14th, excerpt of record 309, the letter that Honeywell sent to her purporting to revoke her right, purporting to revoke the offer, gave her the right, expressly gave her the right to contest the completeness and accuracy of the background report upon which Honeywell's decision was based. And on December 14th was a Friday. If the court looks, December 14th, 2007, that is, if the court looks in, the court could take record of judicial notice of that fact from a calendar or just look at the e-mail chains that are in the record. She acted within one or two working days by December 17th or December 18th when she was told that they were missing a 1099 from 1992. She immediately went scrapping for it, found it, and submitted it. Sotomayor, can I ask you a question? Yes, ma'am. I don't want to interrupt, but your line of argument appears to be that she complied with all of the provisions of her contract with Honeywell and that she was entitled to get the job, and yet you are not suing for breach of contract, the written contract. That's correct, Your Honor. So what's going on? She did everything. The district court said there was a written contract, and that's what we look at, and she didn't. Honeywell was entitled to rely on the provisions of that contract, and so she can't use another theory in order to recover. So what's going on? If she's not suing for breach, why not? I wasn't trial counsel, but I believe that this is the reason why she wasn't suing for breach of contract, is that by the time that had happened, she wasn't looking for contract damages. She wasn't looking for back pay. She wasn't looking to be able to be reliant. What is she looking for, then? Reliance damages, which under existing precedent, the Schley case that we cited, Tempe, Hernandez from Texas, and other cases that we cited all provide that someone who has acted in reliance justifiably, were relied to their detriment, is entitled to reliance damages. Help me out, because I really have difficulty with this. The reliance damage, I take it, would be you're talking about, if I understand your brief, the job that she – the Boeing job that she gave up. That's correct. Obviously, I think there would be some limits with respect to what she could or could not recover. That would be for the judge and jury to sort out. But one aspect of a reliance damages would be I relied upon your promise. You breached your promise. And as a result of that – Promise of what? The promise of – Of a job? Of a job, right. And so you told me that I could – if I passed the background check, if I gave you the information that you needed, you would hire me. I gave you the information that you needed, which our position is she did here. And that when she gave them that information, they breached their promise. They didn't hire her. She would then be entitled to rely on reliance damages, which Schley and Tempe and Hernandez, the cases that we cited, all support that proposition. They would include – But you see that – Yes. I think what the district court was saying was, look, that's all fine if you didn't have a written contract. But you did. So you can't rely on just promissory estoppel if you have a written contract. You have to show how there was a breach of that contract. And that's why that's where I asked the question was. No, I appreciate that, Judge Schroeder. I do agree that's what the judge here concluded in Arizona. Here would be my point, is that it implicates a legal argument that they've raised, which is that if you have an enforceable contract addressing the same subject matter, that it precludes a claim for promissory estoppel. And that assumes two premises, neither of which I believe have been satisfied  One, it's got to be enforceable. If we're right, if there's a genuine issue of material fact with respect to whether or not they breached their promise, then there's no enforceable contract. But which promise? The promise of a job? The promise that if you pass the background check, you will have the job. And isn't that governed by the terms of the written contract? Well, but the – to the extent of if they breached the promise, if I understand the question, Judge Schroeder, and this is why I was outlining some of the genuine issues of material fact that we believe demonstrate they did breach the promise, if they breached the promise, then there is no enforceable contract. There's nothing else in the contract that actually addresses how are they going to implement or follow those background procedures. If I may, please, because I – if I can demonstrate just a couple of the issues that I think are critical here. In that December 14th letter, they told her, well, we're going to revoke your offer because you didn't pass the background check. We're revoking it based upon the background check report that we got from Higher Right. You have a right to dispute the accuracy and completeness of that report, and we would refer you to Higher Right. As soon as Ms. Bowman found that, she immediately contacted them, Higher Right, that is, what's the problem? You just told me that I passed. And Higher Right says, well, I guess we need to get a 1099 from you from 1992. She immediately finds it within one or two working days, and she submits that. And then finally, it's undisputed. Along with the other points I mentioned, no deadline was specified. She was told that she was passed. The December 14th letter expressly gave her the right to contest the completeness and accuracy. And then she continued to work with Higher Right throughout that process after December 14th. You'll see the e-mail change in the record, particularly excerpts of record 211 to 213, where at no time did Higher Right refuse to accept information from her. At all times and for all purposes, Higher Right was accepting information, was continuing to process her application. Finally, most tellingly, this excerpt of record 51, paragraph 71 and 73 demonstrate she did, in fact, submit everything that Honeywell needed or said that they needed to verify her prior employment. Now, Judge Schroeder, I think what's important is that based upon that, a reasonable juror could look at this fax and say that offer was never revoked, that you gave her the right when you purported to revoke that offer, you gave her the right to submit information. She did that. She did everything that you requested that she do to pass her background check. And a reasonable juror could conclude that she did pass the background check and that, therefore, Honeywell breached its promise. Kennedy, this is a diversity case? Yes, sir, it is. We rely on Arizona law? Yes, sir, we do. I'm just wondering how do you get around the case of Chaney v. Chittenden in 1977 that says there can be no implied contract, such as promissory estoppel, where there is an express contract between the parties in reference to the same subject matter? Aren't we bound by Arizona law? Well, I believe the way we get around that, and I'm familiar both with Chaney and with bike-fashioned Kramer, they rely upon the implied covenant of good faith and fair dealing. And the question there was if you have an express contract that governs the same terms, and the reason why you have to have an enforceable contract, a contract that has not been breached. And in this case, if we're correct, if a contract was breached, then it's not enforceable. If a reasonable juror looked at this case and said Honeywell breached its promise to her, then, of course, there's no enforceable contract, and she would be entitled to it. But you're begging the question. You can't establish that Honeywell breached the promise to her without considering the written contract. I understand. What this case seems to say is, with all respect, that no matter how ingenious your ideas are as to how the contract that you like was breached, the fact of the matter is there was a written contract which you don't like. And that's the one that determines whether there was a breach or not. The best way I can answer that, Judge Bea, is to say that a promissory estoppel as with the implied covenant is a recognized alternate form of relief. If, in fact, the contract had not been breached. But that's like saying a oral contract to convey land is an alternate form of relief to the failure of having a memorandum in writing by the party to be charged. That doesn't work. I think it does work, and I would defer the question. It's not if you want Blackacre. If you want something else, fine. But if you want Blackacre, it doesn't work. Right. And I suppose there's two points I can make in answer to that which I believe would answer the Court's question, is that the Higginbottom case, which we've cited and we've discussed, there was a promissory estoppel case. There was, in fact, a written agreement there. And the Court nevertheless allowed Mr. Higginbottom to prosecute his claim for promissory estoppel. It failed for lack of reasonable reliance, but otherwise it was a valid claim. The second, I guess I would argue, Judge Bea, I'm admitted both in Alaska and in Arizona. I believe this is accurate in both jurisdictions, which is that promissory estoppel is a recognized alternate form of a contract claim. And in this case, as you point out with your Blackacre, Greenacre, Whiteacre analogy, Ms. Bowman elected to look for reliance damages and not for contract damages. What were the damages that she sought in the district? I understand you weren't counsel in the district court. What was the damages that she sought? Well, I don't know that that's actually in the record, but I know I've spoken both with trial counsel and with Ms. Bowman. And what she lost, she lost her job. She lost her home. She had to go get some additional training to find some alternate employment. And so in terms of the reliance damages that she lost, they were quite comparable to what was discussed in the Schley case where the attorney was going to go work for Microsoft or in Tempe or in Hernandez, the other cases that we cited in our briefing. So I believe with – yes, I'm sorry. No, go ahead. If I may, I've got like a little over a minute briefly on the negligent misrepresentation claim as well. We agree substantially with the law that Honeywell has outlined with one exception. A statement of fact can be a statement or an omission of fact. And the argument that we made before Judge Bolton and the argument that we've made here is that there was a significant omission of fact with respect to the manner by which these background policies were going to be implemented, not unlike what happened in the St. Joseph case that we cited in our brief, where the insurance company was verifying coverage and they had sort of a patchwork quilt of various policies and practices that they never explained to St. Joseph's. And as a result, St. Joseph's was able to successfully allege and prosecute a negligent misrepresentation claim based upon the omission of fact. The same argument that we've made here with respect to Ms. Bowman, that had she known that this whole background check process was so precarious and somewhat arbitrary and capricious that she wouldn't have accepted or attempted to accept the offer at all. We believe that there are clearly genuine issues of material fact. We would ask the Court respectfully to reverse and remand. I thank the Court. Thank you. Good morning. May it please the Court. My name is Leah Freed. I represent Honeywell International, Incorporated. I would submit to the Court that the district court's ruling of summary judgment in favor of Honeywell on Ms. Bowman's claims for promissory estoppel and negligent misrepresentation should be affirmed. Ms. Bowman failed to meet her burden to raise a material issue of fact as to either claim. With respect to Ms. Bowman's claim for promissory estoppel, there are two separate and independent bases upon which this Court may affirm summary judgment. The first is that the Court should find that the district court correctly concluded that Ms. Bowman's claim for promissory estoppel is barred under Arizona law because an enforceable contract existed. As the Johnson case recognized, a claim for promissory estoppel is merely a replacement theory when either there is no existable existing contract or the parties are unable to come to a mutual agreement. Here's the question. Because there was a contract, sometimes cases change between the time that they're in the trial court and by the time they get here. What was it that was that she failed to comply with in the background check? The background check required that Honeywell confirm her prior employment, specifically that they confirm the dates, the start date and end date of any employers that she listed on her employment application. And what was it that they couldn't verify? They were unable to verify the dates of her employment with Alliance Partnerships, which was a side job that she held and listed on her application. And pursuant to Honeywell's standards, that information needed to be verified by documentation such as W-2s, pay stubs or other tax information. And those are all listed in the Honeywell's standards, which are part of the record. And did they go back to her and say, we can't verify this employment? Over a period of several weeks, Honeywell and Higher Right contacted Ms. Bowman and repeatedly asked her to provide documentation verifying her start and end dates of employment. During that time, she indicated she did not have the documentation that Honeywell and Higher Right were requesting. Now, later on, after the offer had been withdrawn, she actually did come forward with the documentation that they had been requesting, specifically W-2s to establish both the start and end date of that business. And by that time, she'd quit her past job, and she still couldn't get the Honeywell job? Correct. She had resigned her prior employment, and because she did not pass the background investigation, Honeywell did not agree to hire her. And so by the time she found the documentation, it was too late to get the Honeywell job? Correct. And I would like to address a point that the appellant raised, which was that Honeywell notified Ms. Bowman that she had the right to challenge or seek additional information about the findings of Higher Right. In that letter, it specifically identified that the basis of that right was pursuant to the Fair Credit Reporting Act. Because Honeywell had relied on information provided by a consumer reporting agency, she had certain rights under the Fair Credit Reporting Act to dispute the findings specifically with that credit reporting agency. Nowhere in that letter did it say that should she be able to ultimately dispute those findings, that Higher Right would reconsider its decision. So your position is that the Fair Credit Reporting Act would give her rights as to some third party who hadn't produced documents, but that wasn't what you were asking for. You were asking for her W-2s and pay stubs from Alliance. Right. Her right to dispute had to do with the rights to work with the credit reporting agency to verify those discrepancies. So turning back to my argument, there was an enforceable contract in this case. Honeywell offered to hire Ms. Bowman should she be able to fulfill the conditions of its offer. The fact that Honeywell later terminated the contract because she was unable to fulfill those conditions does not render the contract unenforceable or invalid. Therefore, the precedent that we must follow is the Arizona Supreme Court's which says you cannot imply a contract under a theory of promissory estoppel where an enforceable contract exists. But isn't the problem here that she gave up? She was told at one point that all she had to do was to pass the background check, and that usually is pretty formal. And so she said, I don't, but I don't want to lose the pay that I would get for over the holidays from my old job. And they said, well, quit your old job and start now. Right. And she did that, and now, and then she, ordinarily she wouldn't have lost her old job, but now she's out her old job and she's jobless. Right. Prior to her acceptance of the offer letter, she had discussions about what the start date would be and discussions about the fact that should she leave her current position, she would be forgoing some pay over the holiday period. At the time, though, that she received the offer letter, she had had those discussions and read the offer letter, which specifically says, you cannot start work until you satisfy these conditions, which included a background check, a drug test, you know, various other terms. Nowhere in the record is there any affirmation by anyone at Honeywell that she should resign her employment or that she needed to do so by a certain date. In fact, the offer letter states that if you, if we hire you, you will be paid for  And if you quit, if you start work with us at such and such a time, then you will get this pay. Exactly. And Ms. Bowman conceded in the record that she understood she wouldn't receive that pay unless she ultimately was hired and began working for Honeywell. And the offer letter also doesn't state a start date. It says, once the start date is established and should it need to be changed, you should contact your manager. What about going to the second ground, negligent misrepresentation? Here's the situation. Wasn't the superior at Honeywell negligent in saying, well, if you come to work here in December, we'll pay you and you can come to work? Isn't that a negligent misrepresentation? I believe the statement was, should you, should you be hired and should you start with us, we will compensate you for the time that you missed with your prior position. But that statement needs to be taken into context, and Ms. Bowman admitted on the record she knew at the time he made those statements and at the time they discussed the start date, she had to meet the conditions in the offer. So by quitting her other job, she acted at her own risk. Yes. She acted at her own risk with full knowledge of the terms set forth in the And if the Court would like me to, I'd like to go into the reasons why even if we did address the promissory estoppel claim, that that claim also fails, because there's no disputed fact that she didn't meet the conditions of the background investigation. And specifically ---- Is that laid out in the district court record, that she didn't meet? Right. What the district court did is they found on two separate bases, they basically double-barreled their order stating, number one, we find that under the Sinead precedent, there is no claim for promissory estoppel here. But even if you were to go and analyze her claim for promissory estoppel, there's no evidence in the record that that promise was breached. Both Honeywell and its agent found that she was unable to verify the discrepancies in her employment. And I'll point out the appellant raised the issue of, well, you know, there was no time limits put on how long she had to comply with this, with the terms of this offer. Well, she also recognizes that Honeywell was in a hurry to fill this position. She understood that. And there's multiple correspondence over approximately a two-week period where Honeywell and HireRight are repeatedly requesting from her to provide this documentation saying, this is necessary for us to move forward with your employment. And I'll just point out that both Honeywell and HireRight found that there were discrepancies in her employment background. She was unable to verify the start and end dates of her employment. And the appellant makes much of the fact that the HireRight report indicates that she met company standards. But the record establishes that she was notified immediately that HireRight did not make the hiring decisions. And the report itself still indicated that there was a discrepancy in the dates of her background investigation. And then contrary to what Ms. Bowman has argued in her brief, Honeywell has never articulated inconsistent reasons for its decision to withdraw the offer. It is always stated that the reason it withdrew the offer is they were unable to verify the dates of her employment with Alliance Partnerships. And Ms. Bowman points to two documents in the record that she believes evidence is differing reasons for its decision. And they're at ER-309 and ER-315. And I would submit that if the court looks at those records, they'll find that they show that the exact same reason was offered by Honeywell on both occasions. Honeywell notified Ms. Bowman that based, quote, in whole or in part on the information provided by HireRight, it determined she did not pass the background check. And that statement refers to the discrepancies in the dates of her employment with Alliance Partnerships. And the other document is the e-mail from Honeywell to HireRight indicating that they should change the designation on their report to does not meet company standards because Ms. Bowman failed to provide the documentation to establish the dates of her employment with Alliance Partnerships. Next, with respect to Ms. Bowman's claim for negligent misrepresentation, the district court correctly found that she could not establish a claim for negligent misrepresentation because there's no evidence in the record that Honeywell made a false statement or omission of present facts that she relied on to cause her damage. Here the basis of Ms. Bowman's claim is you made a promise to hire me in the future. This is the very statement upon which she relied to her detriment. And I would submit that none of the alleged statements or omissions identified in the appellant's brief sustain a claim for negligent misrepresentation. They're either not false statements, they're either not material omissions by Honeywell, or they're statements occurring after she engaged in the reliance by Honeywell on the claim to hire her. Next, there are no allegations of negligent misrepresentation. I think I have 11 seconds, so just very briefly. I think very briefly what I would ask the court to do, please, is to look at the negligent misrepresentation, omission of fact claim that we outlined on 225. It certainly has been Ms. Bowman's position that had she known that this employment background check process was going to be so precarious and so haphazard for the reasons we outlined, she never would have quit her old job. And finally, with respect to the case. Well, what's so precarious about asking to verify your stated prior employment? There are a number of different things, Your Honor. The actual guidelines, as we discussed, only required a 7-year go-back for 7 years. What they were asking with respect to alliance partnerships was to go back almost 17 or 18 years. Very few of us can get the guidelines from, the 7-year guidelines? From Honeywell, Your Honor. Is that in the written contract, we will only check your background for 7 years? Well, that's a good point. The job application said 10 years. And so there's somewhat, Honeywell's job application said 10 years. And so. Job application, but the contract of employment, does it have a limit as to the background check years? No, it doesn't, Your Honor. And it's an excellent point. I think our position would be and has been that it was implied that there would be a fair and reasonable background check. And that there were a number of, for the reasons we've outlined in our briefing, a number of conflicting. But when we go through a background check, they ask us where you lived after you got out of high school. I wouldn't. You know what? For an Article III judge, I would not be surprised. I'm not going to tax the Court's time further. I respectfully request that the Court reverse. Thank you so much for listening to me today. Thank you, counsel. The case just argued is submitted for decision. That concludes the Court's calendar for this morning and the Court stands adjourned. All rise.
judges: Anello, Schroeder, Bea